UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IÑIGO RUMAYOR<br><br>            Plaintiff,<br><br>v.<br><br>MASTERCARD INTERNATIONAL INC.<br><br>            Defendant | COMPLAINT<br><br>Case No.: 23-9280 |

Plaintiff Iñigo Rumayor brings this suit against Defendant Mastercard International Inc. Plaintiff alleges as follows:

1. This complaint arises from Defendant's breach of contractual obligations to Rumayor, which have deprived Rumayor of nearly two million dollars.

## PARTIES

2. Rumayor is a former employee of Defendant and a current domiciliary of Mexico.

3. Defendant Mastercard International Inc. ("Mastercard" for short) is a corporation headquartered in New York.

## JURISDICTION AND VENUE

4. This Court has personal jurisdiction over Defendant because it is headquartered in New York.

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a), because Rumayor seeks more than $75,000 and is a citizen of Mexico, while Defendant is a citizen of New York.

1

6. Venue is proper in this district because Defendant resides in this state and in this district and because much of Defendant's acts and omissions giving rise to Plaintiff's claim occurred in this district.

## RELEVANT AGREEMENTS

### Holdback Agreement

7. In approximately 2012, Rumayor co-founded Grupo Regalii, Inc., a payment processing company later renamed Arcus Financial Intelligence, Inc. ("Arcus" for short). Rumayor was also employed by the company and its subsidiaries in Mexico.

8. In November 2021, Arcus was acquired by Defendant Mastercard.

9. Rumayor received a portion of the amount paid by Mastercard for Arcus.

10. As a result of the transaction, Rumayor also became an employee of Mastercard.

11. Rumayor and Mastercard agreed that 20% of Rumayor's proceeds from the sale would be paid over a period of two years. The deferred payment was known as the "Holdback Amount," and the agreement was known as the "Holdback Agreement."

12. The Holdback Agreement is attached as Exhibit A.

13. The Holdback Agreement was dated March 31, 2021. The parties to the agreement were Rumayor, Mastercard, and Arcus. *See* Exhibit A at 1.

14. The Holdback Amount was $1,115,342.

15. Under the Holdback Agreement, half of the Holdback Amount was due to Rumayor on the one-year anniversary of the transaction (in November 2022) and half was due on the two-year anniversary (in November 2023). Rumayor was entitled to each payment if, on the due date, he was employed by Defendant. *See* Exhibit A at 1 (Paragraph 2(b)) and Exhibit B at 9.

16. Alternatively, Rumayor was immediately entitled to the entire Holdback Amount if he was terminated without cause, as defined in the agreement; resigned with good reason, as defined in the agreement; or died or became disabled, as defined in the agreement. *See* Exhibit A at 1–2 (Paragraph 2(c)).

17. The Holdback Agreement defines "Cause" for termination as: "(a) the willful and repeated failure by the Holdback Party to substantially perform his duties or responsibilities (other than due to Disability) and failure to cure such failure to the reasonable satisfaction of Parent within thirty (30) days after the Holdback Party has received a written demand of performance from the applicable member of the Company Group, (b) the Holdback Party's engaging in gross misconduct that is injurious to the applicable member of the Company Group, including material damage to such member of the Company Group's reputation or standing in its industry, (c) the Holdback Party's having been convicted of, or entered a plea of guilty or nolo contendere to, a crime that constitutes a felony, or a crime that constitutes a misdemeanor involving moral turpitude, (d) the material breach by the Holdback Party of any material provision of any material written covenant or agreement with the applicable member of the Company Group, or (e) the breach by the Holdback Party of the applicable member of the Company Group's code of conduct, or any material provision of the following policies of such member of the Company Group: non-discrimination, substance abuse, anti-harassment, non-retaliation, workplace violence, nepotism, travel and entertainment, corporation information security, antitrust/competition law, enterprise risk management, accounting, contracts, purchasing, communications, investor relations, immigration, privacy, insider trading, financial process and reporting procedures, financial approval authority, whistleblower, anti-corruption,

foreign corrupt practices act, and similar policies, whether currently in effect or later adopted." *See* Exhibit A at 10 (Exhibit C).

### Retention Agreement

18. In the months after Mastercard acquired Arcus, Mastercard officials praised Rumayor for his work and offered him a promotion and a raise.

19. Mastercard also offered Rumayor a lucrative retention package to further encourage him to continue his employment for the company.

20. On March 4, 2021, Rumayor and Defendant entered into an agreement governing his continued employment, which we will refer to as the "Retention Agreement."

21. The Retention Agreement is attached as Exhibit B.

22. Under the Retention Agreement, Rumayor was entitled to a "Performance Award" of up to $300,000, depending on the company's satisfaction of certain revenue targets. *See* Exhibit B at 1 (Paragraph 1(b)).

23. The agreement also provided that Rumayor was entitled to participate in other "Mastercard incentive plans," which provide bonuses based on performance. *See* Exhibit B at 2 (Paragraph 1(c)).

24. Rumayor signed the Retention Agreement on March 6, 2021.

### Award Agreement

25. On March 23, 2022, Rumayor and Mastercard reached another agreement regarding two incentive awards to which he was entitled as a Mastercard employee. We refer to this agreement as the "Award Agreement."

26. The Award Agreement is attached as Exhibit C.

27.     Under the Award Agreement, the Performance Award established by the Retention Agreement was replaced by two other awards: (1) a one-time cash incentive award with a target amount of $300,000, referred to as the "Cash Award," and (2) an award of restricted stock units with a fair market value of $200,000. *See* Exhibit C at 1.

28.     The Award Agreement provided that Rumayor would be entitled to the Cash Award if he remained employed by Mastercard and met certain business and individual performance goals as of the date of payment, which was expected in March 2023. *See* Exhibit C at 1.

29.     The Award Agreement provided that Rumayor would be entitled to the restricted stock award if he executed the applicable agreement, complied with the terms of the applicable agreement and plan, and remained employed by Mastercard through the vesting date. *See* Exhibit C at 2.

30.     Rumayor signed the Award Agreement on March 29, 2022.

## ADDITIONAL FACTUAL ALLEGATIONS

### Termination of Rumayor

31.     Rumayor was continuously employed by Defendant from March 2021 until November 3, 2022, as Senior Vice President and co-CEO of Arcus.

32.     In a letter dated October 22, 2022, Mastercard informed Rumayor that he would be terminated effective November 3, 2022.

33.     The letter did not identify any cause for termination.

### Failure to Make Payments

34.     Under the Holdback Agreement, Mastercard was required to pay Rumayor the Holdback Amount of $1,115,342 within three business days of terminating him without cause.

35. There was no cause for Rumayor's termination under the Holdback Agreement. Among other things, Rumayor performed his job duties satisfactorily, engaged in no misconduct, and followed Defendant's policies.

36. Yet, Mastercard has not paid the Holdback Amount.

37. Mastercard also has not paid Rumayor any of the bonuses to which he was entitled under the Retention Agreement and Award Agreement.

38. First, under the Retention Agreement, Rumayor was entitled to a Performance Award of up to $300,000.

39. This Performance Award was replaced under the Award Agreement with two separate awards, including a one-time cash incentive award with a target amount of $300,000. The precise amount of that award depended in part on the achievement of five goals.

40. Rumayor satisfied all five of those goals. Yet, Mastercard has not paid Rumayor any portion of the cash incentive award.

41. Second, the other component of the Award Agreement was an award of restricted stock units with a fair market value of $200,000. Again, Mastercard did not pay Rumayor any portion of this award.

42. Third, under the Retention Agreement, Rumayor was also entitled to receive bonuses under other Mastercard incentive plans. Rumayor was informed that he was eligible for such a plan and entitled to a bonus of $110,000 under the plan in "February/March 2023. But Mastercard has not paid the bonus to Rumayor.

43. In all, Rumayor was denied bonuses totaling $610,000, in addition to the Holdback Amount of $1,115,342.

44. Mastercard's desire to avoid paying bonuses and the Holdback Amount to Rumayor was a substantial motivating factor in its decision to terminate him, given (a) the lack of cause for his termination, and (b) the timing of the termination just three to four months before he would receive the bonuses and three weeks before his first payment under the Holdback Agreement.

45. Moreover, Rumayor fulfilled all of the performance-related conditions for receipt of the awards.

46. Rumayor reasonably relied on Defendant's promises under the Holdback Agreement, Retention Agreement, and Award Agreement in continuing his employment with Mastercard, making a down payment on a house in Mexico City in October 2022, and turning down offers for other jobs in 2022.

47. While Rumayor was deprived of payments from Mastercard, he remained bound by a non-compete agreement that limited his ability to find other work, thereby increasing the harm of his termination without cause.

## COUNT I

### Breach of Contract (Holdback Amount)

48. All of the above paragraphs are incorporated herein.

49. The Holdback Agreement provided that Rumayor would immediately become entitled to the entire Holdback Amount if he was terminated without cause, as defined in the Holdback Agreement.

50. None of the elements of "Cause" occurred here.

51. Under the Holdback Agreement, Defendant had three days to pay Rumayor the Holdback Amount following his termination without cause.

52. Defendant violated the Holdback Agreement by failing to pay Rumayor the Holdback Amount upon his termination without cause.

## COUNT II

**Breach of Covenant of Good Faith and Fair Dealing (One-Time Cash Incentive Award)**

53. All of the above paragraphs are incorporated herein.

54. Under New York law, an employee has a claim for breach of the covenant of good faith and fair dealing when an employer terminates the employee and a substantial motivating factor in the termination is the employer's desire to avoid paying compensation or benefits which would be due if the employment continued.

55. Rumayor had a contractual right under the Retention Agreement and Award Agreement to a one-time cash incentive award of $300,000 if he fulfilled certain performance goals and remained employed by Mastercard until March 2023.

56. Rumayor fulfilled the applicable performance goals.

57. Mastercard's desire to avoid paying bonuses to Rumayor was a substantial motivating factor in its decision to terminate him, given (a) the lack of cause for his termination, and (b) the timing of the termination just three to four months before he would receive the bonuses.

58. Mastercard violated the covenant of good faith and fair dealing by terminating Rumayor to avoid payment of the once-time cash incentive award.

## COUNT III

**Breach of Covenant of Good Faith and Fair Dealing (Restricted Stock Unit Award)**

59. All of the above paragraphs are incorporated herein.

60. Under New York law, an employee has a claim for breach of the covenant of good faith and fair dealing when an employer terminates the employee and a substantial motivating factor in the termination is the employer's desire to avoid paying compensation or benefits which would be due if the employment continued.

61. Rumayor had a contractual right under the Retention Agreement and Award Agreement to an award of restricted stock units with a fair market value if he remained employed by Mastercard until March 2023.

62. Mastercard's desire to avoid paying bonuses to Rumayor was a substantial motivating factor in its decision to terminate him, given (a) the lack of cause for his termination, and (b) the timing of the termination just three to four months before he would receive the bonuses.

63. Mastercard violated the covenant of good faith and fair dealing by terminating Rumayor to avoid payment of the restricted stock unit award.

## COUNT IV

### Breach of Covenant of Good Faith and Fair Dealing (Bonus)

64. All of the above paragraphs are incorporated herein.

65. Under New York law, an employee has a claim for breach of the covenant of good faith and fair dealing when an employer terminates the employee and a substantial motivating factor in the termination is the employer's desire to avoid paying compensation or benefits which would be due if the employment continued.

66. Rumayor had a contractual right under the Retention Agreement to participate in a Mastercard incentive plan, under which he was entitled to receive a $110,000 bonus in "February/March 2023."

67. Mastercard's desire to avoid paying bonuses to Rumayor was a substantial motivating factor in its decision to terminate him, given (a) the lack of cause for his termination, and (b) the timing of the termination just three to four months before he would receive the bonuses.

68. Mastercard violated the covenant of good faith and fair dealing by terminating Rumayor to avoid payment of the bonus.

## PRAYER FOR RELIEF

WHEREFORE, Rumayor requests the following relief:

A. Damages for breach of contract, equal to at least the full Holdback Amount of $1,115,342.

B. Damages for breach of the covenant of good faith and fair dealing, equal to at least the amount of the one-time cash incentive award, restricted stock unit award, and bonus, totaling $610,000.

C. Pre-judgment interest.

D. Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY

Plaintiff demands trial by jury on all issues.

Respectfully submitted,

**/s/ Daniel M. Rosenthal**
Daniel M. Rosenthal (*pro hac vice* motion forthcoming)
JAMES & HOFFMAN, P.C.
1629 K Street NW, Suite 1050
Washington, DC 20006
Tel: (202) 496-0500
Fax: (202) 496-0555
dmrosenthal@jamhoff.com

Dated: October 20, 2023